L. SELETZKY Co., INC., Respondent, *v.* MARIE EHRLICH and Another, Appellants.

First Department, December 17, 1926.

Contracts — building contract — action by contractor for alleged extra and additional work — extra work in altering defendant's house related to installation of steam heat — testimony as to whether or not said work was in original contract was directly conflicting — error for court to charge as matter of law that installation of steam heat was extra work — evidence — error to exclude plans for steam heat and testimony as to whether plaintiff initialed said plans and specifications — error to refuse to permit defendant's counsel to direct plaintiff's attention to general specifications referring to steam heat.

In an action by a building contractor to recover for alleged extra and additional work, which consisted of the installation of steam heat, in which the testimony on the question whether or not the original contract covered the installation of steam heat was directly conflicting, it was error for the court to charge as a matter of law that the installation of steam heat constituted extra and additional work, but the question should have been submitted to the jury for them to determine whether or not the plaintiff agreed to install steam heat as a part of the original contract.

It was error for the court to exclude plans for steam heat and to refuse to allow the defendant to testify as to whether or not the plaintiff had initialed plans or specifications for steam heat at the time of the signing of the original contract, and it was also error for the court to refuse to permit defendant's counsel to direct the plaintiff's attention to different parts of the general specifications which referred to drawings and specifications for steam heating work.

APPEAL by the defendants, Marie Ehrlich and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th, day of October, 1925, upon the verdict of a jury, and also from an order entered in said clerk's office on the 29th day of October, 1925, denying defendants' motion for a new trial made upon the minutes.

*Adam K. Stricker* of counsel [*Harold Kohn* with him on the brief; *Joseph S. Weinberger,* attorney], for the appellants.

*Louis Rosenberg* of counsel, for the respondent.

DOWLING, J. This action was brought to recover the sum of $5,337 for alleged extra and additional work which the plaintiff claimed to have performed for the defendants and for alleged extra and additional materials claimed to have been furnished, in altering a private dwelling located at No. 312 West Seventy-sixth street, borough of Manhattan, city of New York. The answer is a general denial and a counterclaim for $1,500.

On August 23, 1922, plaintiff and defendant Simon Ehrlich entered into a contract in writing for the reconstruction of the building in question. In this contract said Ehrlich was designated as the owner, but it thereafter developed that the record owner of the property was the defendant Marie Ehrlich, wife of Simon Ehrlich. The witness Seletzky testified as follows: " Q. Now, after you got word that Dr. Ehrlich was not the owner of this building, but that Mrs. Ehrlich was the owner, did you have any talk with Mrs. Ehrlich? A. Yes, I did. Q. And where did you have this talk? A. On the premises. Q. And what talk did you have on the premises with the two of them? A. I asked her why she didn't sign the contract for this job, and she said, ' It is immaterial, you will get paid just the same. Me and him is the same thing.' Q. And what did you say to her? A. Well, I said, what is the difference, so long as she said the contract was just as good if he signed it, that she gave him the authority to sign the contract. Q. I see; and did you then go ahead with the work? A. Yes, sir."

This testimony was denied by Mrs. Ehrlich, but she admitted that she knew that the building was being reconstructed and that her husband was altering the house, title to which was in her name.

She also knew that the apartments in the building occupied by her and her husband were being altered so that they could occupy a duplex apartment on the second and third floors.

Upon the trial the plaintiff recovered a verdict of $3,990, the largest single item in dispute being one for $1,800 for " steam heat and air pipes." This is the sole issue which we think requires discussion upon this appeal. Upon this disputed question, the testimony was as follows: Plaintiff offered proof that the contract between the parties in designating the work to be done limits it to that set forth in certain designated specifications, having pages numbered 1 to 47, inclusive, and two addenda, and in certain designated drawings, consisting of ten sheets and numbered 1 to 9, inclusive, and 200. These specifications so paged and so numbered were produced by the defendants, and were found to be initialed by the parties, and as so numbered and so initialed were received in evidence. It is claimed that nowhere in the specifications and drawings so numbered and initialed, is there any provision for the performance of any steamheating work. The item " heating " had separate specifications which were received in evidence, and which consisted of five sheets. These sheets on their face formed no part or portion of pages 1 to 47 of the general specifications or of the two addenda thereto, but were separately entitled and bound within a distinct cover as " heating specifications," and were not initialed by the parties.

Plaintiff's witness Seletzky testified that the first time Simon Ehrlich spoke to him about the steamheating work was a few days after he started work on the job, when Ehrlich came into the building and gave him the heating specifications. He was then asked: " Q. What did you say to the doctor, please? A. I said, ' I never saw that specification, I never initialed those specifications, and I will never do any of the steamheating work, because I never figured the job of the steamheating.' ' Well,' he says to me, ' It must be a mistake. The architect must have enclosed it in your original specifications.' I said, ' No, he did not. I never saw any other specification except this one which I have signed.' Q. And did the doctor at that time take out the original specifications numbered pages 1 to 48, which have been marked in evidence as Plaintiff's Exhibit 4? A. Yes, sir. Q. And did he go over the specifications with you? A. Yes, he looked at every page. Q. Now, when he went over the specifications, what did he say to you about the steamheating? A. He said, ' It is funny, it is not in this specification.' Q. And what did you say? A. I said, ' Yes, it is funny, because I never figured it. I don't know anything about steamheat.' Q. What did the doctor say? A. Well, he said,

' Well, I will go to the architect. I will take it up with the architect.' Q. And then the doctor left? A. Yes. Q. When did you hear from the doctor again about the steamheating? A. A few days later. Q. And what did he say to you? A. ' Well,' he said, ' the steam-heat has got to be done.' Q. What did you say? A. I said, ' I ain't going to do it, because I never figured on it.' Q. Yes. A. ' Because,' I says, ' that is an item about $1,800 or $2,000.' Q. And what did he say? A. Well, he said, ' I took it up with the architect, and the architect insists you should do the steamheat.'" This resulted, Seletzky testified, in Ehrlich telling him: " The steamheat has got to be done and we will see later who has got to pay for it, whether the architect or myself." He refused to give Seletzky a written order for this work, but told him to " go ahead."

Plaintiff also submits the contract with Ehrlich, which provides: " Article 4. The Contractor and the Owner agree that the General Conditions of the Contract, the Specifications and the Drawings, together with this Agreement, form the Contract, and that they are as fully a part of the Contract, as if hereto attached or herein repeated; and that the following is an exact enumeration of the Specifications and Drawings:"

Then follows the enumeration referred to consisting briefly of (1) Cellar partitions. (2) Wainscoting partitions. (3) Leave out wardrobe on 3d floor. (4) Wash down front after work is completed. (5) Contractor to furnish sidewalk bridge if required. (6) Accessories in bath rooms. (7) Stucco for 5th floor. (8) Door to apartment on 4th floor. (9) Electrician to remove and reset electric light fixtures. It is then provided: " General specification pages 1 to 47 inclusive and two addenda and drawings 1 to 9 inclusive and 200 for alteration to residence at 312 West 76th Street."

On the other hand, Ehrlich categorically denied Seletzky's testimony above quoted, and testified he never had any conversation with him about steamheating after the contract was signed. He testified further: " Q. There is testimony here that right after the contract was signed you delivered some heating specifications to Mr. Seletzky. I ask you, did you at any time deliver to Mr. Seletzky any steamheating specifications? A. I did. Q. When? A. I gave him the steamheating specifications — the plans and specifications, together with all the rest of the plans and specifications, at the time he was introduced to me as a building contractor to figure on the job. Q. I show you Plaintiff's Exhibit 23, and I ask you: Are these the steamheating specifications to which you have just referred? A. Yes, these are. These are the specifications for the steamheating that I delivered to him."

And further: " Q. Mr. Seletzky says in substance that you

brought to him to the building a set of steamheating specifications after he had commenced to do his job? Did you? A. I did not. Q. He says he never saw those specifications before. Did he say that to you? A. Not to me. Q. Do you know whether Mr. Seletzky initialed any steamheating plans or specifications at the time of the signing of the contract? Mr. Rosenberg: That I object to as irrelevant, incompetent and immaterial, on the ground that the documents themselves initialed would be the best evidence whether they were initialed or not. [Objection sustained; exception to defendant.] Q. Did you say to him, after the making of the contract, that it is evident that there is nothing in the specifications in regard to steamheat, and that you would take it up with the architect? A. I never had any conversation with him about any steamheat after the contract was signed. Q. Did you, after the making of the contract, state to him that the steamheating must be done? A. No. Q. Did he, after the making of the contract, say to you that he would not do it because it was an item of $1,800 or $2,000? A. Never a word about it. Q. Did he ask you for a written order to do the steamheating work? A. Never a word about any steamheating. Q. Did you say to him that you cannot give him a written order until the matter is straightened out with the architect? A. I certainly did not."

Gall, an architect associated with Jacobs, the architect named in the specifications, testified that he had complete charge of the work in these premises and that the contract, plans and specifications were prepared under his supervision; that he visited the premises frequently while the work was going on, and that at no time did Seletzky claim that the steamheating was an extra or ask for a written order for the work. Seletzky testified that the steamheating work was done without reference to any plans, though plans are referred to eight times in the heating specifications. Defendants offered those plans in evidence but they were excluded by the learned trial court. Defendants attempted to show by this witness in contradiction of Seletzky's testimony that the job was done without any steamheating plans, that Gall had seen steamheating plans on the job while the work was being done, but the learned trial court excluded the testimony.

The general specification provided as follows: " The general contractor shall submit his estimate without the plumbing, heating and electric work included; he shall at the same time submit separately a list of the subcontractors figuring the plumbing, heating and electric work, together with their estimates." Defendants introduced proof that although Seletzky contended that steam-

36

heating was an extra, on September 25, 1922, he sent to the architect a list of subcontracts, totalling the exact contract price, $16,750, and included in these items, making up that contract price of $16,750, was the item "plumbing and heating $3,200." This itemization was supplied by the plaintiff to facilitate the architect in computing the percentage payments to which the plaintiff would be entitled under the contract as the work progressed.

Defendants contend that Seletzky was apparently under no misapprehension at that time that heating was included in the general contract, nor was he under any misapprehension when he made his written requisition for his first payment, which accompanied the itemization of subcontracts, where one of the items is: "Roughing for plumbing and heating — $1500." Again more than a month thereafter, on October 30, 1922, Seletzky made another requisition for a part payment under the contract in which is stated as one of the items "Plumbing and heating $1,000." Payments were made on account of each requisition. On the first requisition the architect issued his certificate for $4,000. Subsequent certificates were issued from time to time until the work was completed.

From this statement of the conflicting testimony upon the trial, it must be apparent that a sharp issue of fact was presented as to whether the charge for steamheat and air pipes was an extra, as claimed by plaintiff, and ordered to be done by defendant as such an extra, or whether it was a part of, and included in, the work originally contracted to be done and for which plans had been furnished, and referred to in the specifications and for which no order as extra work was given by defendant.

The learned trial court, however, treated this question as one of law, and so understanding it, resolved that issue in favor of plaintiff as is apparent from his charge to the jury. The second sentence, and what immediately follows, shows this clearly. He said: "The action is on a building contract and first let me say that one of the most bitterly fought issues between the parties has already been determined by me, so that it is out of your hands. I suppose that is what counsel for the defendants earlier referred to in his closing address to you. In other words, these heating specifications, so-called, I refuse to let you consider, except in passing as reference to them remains in the testimony. I confine you to the original contract and any modifications of it, in writing or oral. The contract itself and the specifications are all initialed, and that is why, as a matter of common sense, not as a question of law, I confine you to them."

Not satisfied with this statement, plaintiff's counsel desired to further impress the jury with the trial court's declaration that he

had already reached a determination on the steamheating extra, so he said: "I will ask your Honor to charge the jury that under the contract, as a matter of law, steamheating was not included under the original contract. The Court: I thought I told them so, I did tell them so during the course of the case, and I tried to tell them so a minute ago, and I tell them so again. Mr. Rosenberg: I ask your Honor to charge the jury that, under the testimony as given, they have but two figures before them on which to determine the value of the steamheating, $1800 testified to by the plaintiff, and $1600 testified to by the defendants' witness Mr. Gall, the architect. The Court: I so charge."

This amounted clearly to a charge as a matter of law that plaintiff was entitled to recover for the steamheating extra, and the only question left to them for determination was whether plaintiff should recover for this item $1,800 or $1,600. It did not even leave the question for the jury of whether defendants had ever given the order for the alleged extra work.

Defendants' counsel then said: "I should like to except to that portion of your Honor's charge which says in substance that the steamheating contract was not embraced in the contract. The Court: Certainly. Mr. Weinberger: Now, I think your Honor said to the jury that you had kept the heating specifications out of evidence. I believe the specifications were allowed in. The Court: No, I did not say that. I said except as I left reference to them in the case the heating was out of the case as a part of the contract. That is what I tried to tell them, and what I tell them now."

Whatever effect this latter charge may have had, it did not in any way modify the ruling that as a matter of law, plaintiff was entitled to recover for the steamheating extra as a matter of law but reaffirmed it. These rulings were erroneous and the questions of fact as hereinbefore indicated should have been submitted to the jury: Was the charge for steamheat and air pipes an extra, outside of the work originally contracted to be done and forming no part thereof, and was an order for it to be done as extra work given to plaintiff by defendants?

Furthermore, reversible error was committed by the learned trial court in excluding the plans for steamheating; in refusing to allow the defendant Simon Ehrlich to testify whether Seletzky initialed any steamheating plans or specifications at the time of the signing of the contract; and in refusing to permit defendants' counsel to direct Seletzky's attention to various parts of the general specifications which referred to drawings and specifications for steamheating work. These rulings referred to matters which were

relevant to the defense and important in its presentation, and the exclusion of the plans and the questions was prejudicial to defendants.

The judgment and order appealed from should, therefore, be reversed, and a new trial ordered, with costs to the appellants to abide the event.

Clarke, P. J., Finch, McAvoy and Martin, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to the appellants to abide the event.